UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TY'RELLE LEE HARRIS,                    )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )    No.   3:12-CV-319
                                        )          (VARLAN/GUYTON)
CITY OF KNOXVILLE, TENNESSEE, *et al.,* )
                                        )
            Defendants.                 )

## MEMORANDUM OPINION

This civil rights action is before the Court on two pending motions for summary judgment: one filed by individual defendants Thomas Thurman and Fred Kimber [Doc. 12] and one filed by defendant City of Knoxville, Tennessee [Doc. 17]. Both motions are supported by memoranda of law [Docs. 13, 18]. Plaintiff Ty'Relle Lee Harris has responded to both motions [Docs. 19, 20, 22, 25, 26] and the defendants have filed reply briefs [Docs. 24, 27]. The motions are now ripe for determination.

After careful consideration of the all the relevant pleadings and supporting documentation, the motions for summary judgment [Docs. 12, 17] will be **GRANTED**.

## I.    Relevant Facts

As the Court is obliged to do in reviewing a motion for summary judgment, the facts of this case will be viewed in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

During the early morning hours of June 17, 2011, at approximately 2:48 a.m., plaintiff was walking behind the businesses near Cumberland Avenue and 19th Street in Knoxville, Tennessee, and was struck by a vehicle operated by David C. Wilder, who is not a party to this action. Mr. Wilder fled the scene of the accident and was later stopped and arrested by the Knox County Sheriff's Department at approximately 4:32 a.m. the same morning. Mr. Harris claims that the collision with Mr. Wilder's vehicle caused him to "sustain severe and permanently disabling injuries to his lower extremities, including but not limited to his right leg and left foot" [Doc. 1-1 ¶ 8].

Prior to the collision, defendant Kimber, a patrol officer with the Knoxville Police Department, observed a black Cadillac that appeared to be cruising on Cumberland Avenue. Officer Kimber observed the Cadillac, driven by Mr. Wilder, make several passes traveling east and westbound on Cumberland Avenue, pull into parking lots to turn around and then travel in the opposite direction. After observing the Cadillac cut through several parking lots, Officer Kimber decided to initiate a traffic stop between 2:00 and 2:30 a.m. [Doc. 12-1 ¶¶ 3–4].

Upon investigation, Officer Kimber noticed the odor of alcohol coming from the vehicle, but determined that the odor was not coming from Mr. Wilder. Instead, the odor was coming from a "visibly intoxicated individual in the passenger's seat." Officer Kimber also observed an unopened can of beer in the center console of the vehicle. Mr. Wilder and his passenger informed Officer Kimber that they were "looking for girls." Officer Kimber concluded that he did not have probable cause and/or reasonable suspicion to prolong the

2

traffic stop because he did not suspect that Mr. Wilder was intoxicated or engaged in any other wrongdoing. Officer Kimber issued Mr. Wilder and his passenger a verbal warning about cruising, requested that they park and walk, and then permitted them to leave [Doc. 12-1 ¶ 4]. Defendant Thomas Thurman, also a patrol officer with the Knoxville Police Department, observed Officer Kimber conduct this traffic stop. Officer Thurman was a significant distance away from the traffic stop and saw Officer Kimber leaning against the driver's side door of the vehicle while speaking with the passengers [Doc. 12-2 ¶ 3]. Officer Thurman did not interact with the passengers of the vehicle or participate in the traffic stop in any way [Id. ¶ 4].

Shortly thereafter, Officer Kimber received information from dispatch that an individual had been struck by a vehicle in the alley behind the businesses on the north side of Cumberland Avenue, near 19th Street. Upon responding to the scene, Officer Kimber observed Mr. Harris on the ground and appearing to be in pain. The individuals at the scene that witnessed the accident identified the vehicle that struck Mr. Harris as a black Cadillac [Doc. 12-2 ¶ 6].

Approximately two and a half hours later, Officer Thurman encountered Mr. Wilder's vehicle under investigation on Clinton Highway by the Sheriff's Department for driving under the influence. Mr. Wilder's vehicle matched the description of the vehicle that was reportedly involved in the earlier collision with Mr. Harris [Doc. 12-2 ¶ 5]. After Mr. Wilder admitted his involvement in the earlier collision with Mr. Harris, Officer Thurman investigated Mr. Wilder for driving under the influence. Officer Thurman observed the odor

3

of alcohol about Mr. Wilder's breath and person and that Mr. Wilder had watery, bloodshot eyes. Mr. Wilder agreed to submit to blood testing and was arrested and charged with driving under the influence, vehicular assault, and leaving the scene of an accident. The results of the blood testing later revealed the presence of Xanax in Mr. Wilder's blood stream and a blood alcohol concentration below the legal limit [Doc. 12-2 ¶ 6].

Mr. Harris alleges that the individual officers were negligent in failing to administer a sobriety test to Mr. Wilder at the first traffic stop and permitting him to continue driving, in violation of his constitutional rights.[1] Plaintiff also asserts constitutional claims and claims of negligence under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. § 29-20-101, *et seq.*, against the City of Knoxville.

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir.

---

[1]There is some argument that plaintiff has asserted an Equal Protection claim because defendants Kimber and Thurman "did not enforce the laws of a state in the same manner as others in similar conditions and circumstances" [Doc. 1-1 ¶ 13]. However, plaintiff did not respond to defendants Kimber and Thurman's argument that such a claim would fail as a matter of law [*See* Doc. 13 p. 5, n.3]. Because plaintiff has not provided any response or evidence to support an Equal Protection claim, to the extent that one has been alleged, the Court finds that it is waived. *See* E.D. Tenn. L.R. 7.2.

1993).  All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  *Matsushita*, 475 U.S. at 587; *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).  "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations."  *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder.  *Anderson*, 477 U.S. at 250.  The Court does not weigh the evidence or determine the truth of the matter.  *Id.* at 249.  Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989).  Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

Plaintiff suggests that because he has asserted both federal and state claims, the Court must apply both federal and Tennessee summary judgment standards [Doc. 20 pp. 8–10; Doc. 26 pp. 3–5]. This argument is in error. This case was removed to this Court on the basis of federal question jurisdiction and supplemental jurisdiction over plaintiff's state-law claims. It is well settled that this Court must apply federal procedural rules in resolving both federal and state-law claims. *See Hanna v. Plumer*, 380 U.S. 460, 471 (1965) ("When a situation is covered by one of the Federal Rules . . . the court has been instructed to apply the Federal Rule.").

## III. Analysis

### A. Civil Rights Claim Against Officer Thurman

Officer Thurman argues that summary judgment is appropriate as to each of the claims against him because he did not have any involvement with Mr. Harris prior to the collision nor did he have any grounds upon which he could have formulated reasonable suspicion and/or probable cause that Mr. Wilder was impaired while operating the vehicle. Officer Thurman notes that, in order to be liable under § 1983, he had to have some role in the traffic stop upon which plaintiff's claims are based [Doc. 13 p. 5]. In response, plaintiff claims that neither the incident report from Mr. Wilder's initial stop nor the dash video camera footage of the initial stop were produced in defendants' initial disclosures and this evidence would have assisted in determining Officer Thurman's whereabouts at the time [Doc. 20 p. 10].

6

In reply, defendants note that Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure requires only a description, not production, of items subject to the Rule. Defendants have submitted their Initial Disclosures which include the identification of the in-car cruiser video from Officer Kimber's car [Doc. 24-1 p. 2]. The defendants note that no incident report of the initial stop exists and therefore it was not identified in the Initial Disclosures. Defendants further note that plaintiff has not served any formal or informal discovery requests on them and they are not obligated to produce a copy of the video in the absence of such a request [Doc. 24 pp. 4–6].

In the face of Officer Thurman's motion and supporting affidavit, plaintiff has failed to respond with any competent evidence showing a genuine dispute of material fact. *Anderson*, 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial"). Officer Thurman observed Officer Kimber's initial traffic stop of Mr. Wilder from a distance, but did not assist or participate in the traffic stop and had no interaction with Mr. Wilder or his passenger [Doc. 12-2 ¶¶ 3–4]. Because Officer Thurman had no involvement in Mr. Wilder's initial traffic stop, he could not have engaged in unconstitutional behavior. As set forth in Rule 56(e)(2) of the Federal Rules of Civil Procedure, the plaintiff's failure to properly address Officer Thurman's assertions of fact means the Court may consider the facts undisputed for purposes of summary judgment. Accordingly, there is no evidence on which a jury could find in favor

of plaintiff on the constitutional claims against defendant Thurman. Summary judgment will be granted as to the § 1983 claim against defendant Thurman.

## B.    Civil Rights Claim Against Officer Kimber

### 1.    Constitutional Violation

"[Section] 1983 by its terms does not create any substantive rights but rather merely provides remedies for deprivations of rights established elsewhere." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quotation and citation omitted). To prevail on a § 1983 claim, a plaintiff "must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001). Inasmuch as there is no dispute that Officer Kimber was acting under color of state law during the early morning hours of June 17, 2011, the first step in any case in which a violation under § 1983 is alleged is that the plaintiff must identify the specific constitutional rights allegedly infringed. Officer Kimber first argues that his interaction with Mr. Wilder during the initial traffic stop did not deprive plaintiff of any substantive due process rights.

Officer Kimber relies on the Supreme Court's holding in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), and subsequent case law from the Sixth Circuit for the principle that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." 489 U.S. at 197. In *DeShaney*, the minor plaintiff was beaten and permanently injured by his father.

8

The defendant social services department investigated prior complaints of abuse by the father, temporarily removed the plaintiff from the father's home, and ultimately returned the child to the father's custody. *Id*. at 191–193. The Supreme Court noted that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. . . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id*. at 195–196. Thus, the "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure, life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196.

The Sixth Circuit and other courts have developed an applicable exception[2] to the *DeShaney* rule; that is, "[w]hen the State 'cause[s] or greatly increase[s] the risk of harm to its citizens . . . through its own affirmative acts,' it has established a 'special danger' and a corresponding duty to protect its citizens from that risk." *Koulta v. Merciez*, 477 F.3d 442, 445 (6th Cir. 2007) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). In order to bring a claim under the "state-created danger" exception, a plaintiff must

---

[2]*DeShaney* also recognized an exception to its rule "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." 489 U.S. at 199–200. The plaintiff was not in custody at any time relevant to this case and therefore this exception is inapplicable.

show: (1) an affirmative act by the state that either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff. *Koulta*, 477 F.3d at 445. Officer Kimber attacks the first two prongs and argues (1) that no reasonable jury could conclude that his actions during the initial traffic stop created or increased plaintiff's vulnerability to harm or (2) that his actions specifically placed plaintiff at risk [Doc. 13 pp. 13–14].

In response to the first prong of the state-created danger test, plaintiff argues that the initial traffic stop diverted Mr. Wilder's travel and timing such that he was driving down the alley at the same time the plaintiff was in the alley. Thus, this arguably made plaintiff less safe. Further, plaintiff suggests that because Mr. Wilder was not detained or given a field sobriety test, his behavior was "enhanced" and he felt "superior than before the initial stop because he evaded obtaining a DUI and possible other criminal charges." Plaintiff goes on to speculate that Mr. Wilder was "more than likely euphoric" and "riding an adrenaline wave" at the time of the collision [Doc. 20 pp. 15–16]. These arguments are speculative and unsupported by any evidence, competent or otherwise, in the record.

With respect to the second prong, plaintiff responds that the collision occurred shortly before the businesses on Cumberland Avenue were closing and thus it was foreseeable that patrons would be leaving those establishments. Citing Officer Kimber's testimony from Mr.

Wilder's preliminary hearing regarding "everybody walking," plaintiff suggests that the patrons leaving the Cumberland Avenue businesses constituted a discrete group of individuals distinguishable from the public at large which Officer Kimber was putting at risk [Doc. 20 pp. 16–17]. Finally, regarding the third prong, plaintiff relies on his response to the first two prongs by contending that Officer Kimber increased the risk of harm to third parties by his inadequate investigation of Mr. Wilder and that he endangered a discrete group of the public [*Id*. p. 18].

In reply, Officer Kimber notes that plaintiff's complaint alleged the defendants' negligence "constitute[d] a breach of legal duty of care owed . . . to the Plaintiff *and all users of public roads* . . . ." [Doc. 1-1 ¶ 24.] Further, defendant argues that even if the identifiable group to which plaintiff belonged was limited to those individuals walking in the Cumberland Avenue area, there were too many people exposed to the same alleged risk of harm as plaintiff [Doc. 24 pp. 6–7].

As argued by Defendant Kimber and tacitly conceded by the plaintiff, this case is controlled by *Koulta*, 477 F.3d 442, which merits close examination. In that case, Chrissy Lucero went to her ex-boyfriend's house hoping to reconcile with him. The boyfriend was not home, so Ms. Lucero left the house to purchase a "40 of Bud Ice" and returned to the house. Undeterred, Ms. Lucero again left the house and purchased a "40-ounce bottle of Colt 45" and again returned to the boyfriend's house. The boyfriend's continued absence angered Ms. Lucero, so she finished the "the rest of the 40," took an anti-depressant, and drove to the

home of her boyfriend's best friend. The boyfriend was not there, so she drove back to his home and knocked repeatedly on the door. By this time of the early morning hours, the boyfriend's mother called the police to report an "unwanted" person on her property. After three officers arrived and questioned the mother and Ms. Lucero, they ordered Ms. Lucero to leave the premises. Despite being told that Ms. Lucero had consumed a 40-ounce bottle of malt liquor, the officers did not cite her for having expired license plates, did not investigate her driving record, and did not administer a sobriety test. Approximately twelve minutes after her last contact with the police, Ms. Lucero drive through a red light and crashed into Sami Koulta's vehicle, killing him instantly. The officer responding to the collision observed that Ms. Lucero smelled strongly of alcohol, slurred her speech, had red, watery eyes, and had urinated on herself. Mr. Koulta's estate filed a civil rights suit against the city and the police officers, pursuant to § 1983, for violation of Koulta's substantive due process rights for permitting an inebriated Ms. Lucero to drive. *Id*. at 444–45.

Noting the general rule of *DeShaney* and the state-created danger exception, the court found that the estate could not establish either of the first two elements of such a claim. That is, the officers' actions did not create or increase the risk of harm to Mr. Koulta by ordering Ms. Lucero to leave the property despite having knowledge that she had been drinking, and the officers' actions in dealing with Ms. Lucero did not specially place Mr. Koulta at risk. *Id*. at 443. As reasoned by the court, "[t]he risk of harm in this case was that Lucero's drinking and driving would injure someone. As a matter of law, Koulta's estate has failed

to show that the officers 'created' or 'increased' that risk. . . . Lucero's proclivity to engage in risky, and illegal, behavior had blossomed long before the officers arrived on the scene." *Id*. at 446. Further, the court noted, "[t]he officers' failure to administer a breathalyzer test (or otherwise to determine the extent of Lucero's drinking) before ordering her to leave the property may well have been negligent, but it did not 'create' or 'increase' the danger – of Lucero drinking and driving – that pre-dated their arrival on the scene. . . . In the final analysis, Lucero's admitted proclivity to drink and drive that evening placed Koulta (and other people using the roadways) in as much danger before the officers arrived as afterwards." *Id*.

With regard to the second element of a state-created danger claim, the court concluded that Mr. Koulta's estate could not satisfy the "special danger" requirement showing that "the state's actions placed [Koulta] specifically at risk, as distinguished from a risk that affects the public at large." *Id*. at 447 (quoting *Jones v. Reynolds*, 438 F.3d 685, 696 (6th Cir. 2006)). In order to satisfy this requirement, "the government could have specified whom it was putting at risk, nearly to the point of naming the possible victim or victims." *Id*. (quoting *Jones*, 438 F.3d at 696). Noting prior cases where the court has rejected claims when "the victim was not identifiable at the time of the alleged state action/inaction," the court concluded that:

> Koulta was exposed to a risk that affected the public at large, not a discrete group of individuals. Lucero's behavior endangered every driver and passenger on the road that evening, and Koulta was the unlucky driver who happened to be in the wrong place at the wrong

13

time.  Nor can the estate overcome this impediment by contending that Koulta was a member of a more discrete group – of individuals driving on the streets between Frank's house and Lucero's house in the early hours of September 13.  We have no idea how many people would be in that group, and the claimant offers no help in explaining why this group is sufficiently discrete to satisfy this requirement.

*Id.*

The *Jones* case relied upon by the *Koulta* decision also merits examination.  In *Jones*, the plaintiff's estate brought a § 1983 action against police officers and a city for the officers' failure to prevent and encouragement of a drag race in a suburb of Detroit.  The officers arrived upon a large crowd of people who were spectators awaiting the beginning of a drag race.  438 F.3d at 688.  The officers did not intervene or attempt to stop the race.  One of the racers lost control of his car, veered into the crowd, and struck several spectators including Denise Jones, who died from her injuries.  *Id.* at 689.  The Sixth Circuit concluded that the plaintiff could not satisfy the state-created danger exception to *DeShaney*.  "There is no evidence that [the officers] took any *affirmative* action that exposed decedent to any danger to which she was not already exposed."  *Id.* at 691 (quoting *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 913 (6th Cir. 1995)).  "Nothing in the record indicates that the race would not have proceeded if the officers had never arrived at the scene.  And nothing in the record indicates that the officers made Jones 'more vulnerable' to the risk that she had already undertaken by voluntarily choosing to watch the race."  *Id.*  Further, plaintiff could not establish that the officers "increased" her risk of danger when they failed to stop the race.  *Id.*  A "failure to act is not an affirmative act under the state-created danger theory."  *Id.*

14

(quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)). Thus, the officers' failure to stop the race did not aggravate the risk of harm to the plaintiff beyond that which she already faced. *Id*. at 693.

The *Jones* court also held that plaintiff could not establish the "special danger" requirement of her claim. The officers had no interaction with the plaintiff and there was no evidence that the officers had any reason to know they were putting her at risk by their action/inaction that night. The evidence revealed that the crowd contained at least 150 people, which was not an identifiable group of people placed specially at risk by state action. *Id*. at 697–98.

The Court finds that *Koulta* and *Jones* are determinative of the outcome of this case. There is no evidence that Officer Kimber's actions created or increased the danger to which Mr. Harris was vulnerable. Plaintiff has presented no evidence contrary to Officer Kimber's testimony that he could not conclude that Mr. Wilder had been drinking and that he lacked probable cause to prolong the traffic stop. Thus, Officer Kimber did not create or increase the harm to which plaintiff and the unidentified other third parties in the area were already subjected by Mr. Wilder's driving. Further, plaintiff cannot show that Officer Kimber's actions placed plaintiff specifically at risk. There is no evidence that plaintiff, as opposed to the general public, was or could have been identified as a potential victim of Mr. Wilder's impaired driving. Because plaintiff cannot establish either of the first two elements of the

state-created danger exception to the rule in *DeShaney*, plaintiff cannot establish a due process claim against Officer Kimber and summary judgment will be granted as to that claim.

### 2. Qualified Immunity

Officer Kimber alternatively argues that, assuming plaintiff could establish the violation of a constitutional right, he is entitled to the defense of qualified immunity because the right was not clearly established in light of the specific circumstances of the case. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation"; it is "an *immunity from suit* rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (citation omitted). "Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Holzemer v. City of Memphis*, 621 F.3d 512, 518–19 (6th Cir. 2010) (citations omitted).

A three-step analysis is employed by the Sixth Circuit of the United States Court of Appeals for analyzing claims of qualified immunity. First, a court determines whether, "based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred"; second, a court considers "whether the

violation involved a clearly established constitutional right of which a reasonable person would have known"; and third, a court determines "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Holzemer*, 621 F.3d at 519 (citations omitted). There is no requirement that this inquiry be performed in sequence, *id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 227 (2009)), and if a plaintiff fails to establish any one element, the defendant's request for qualified immunity must be granted, *Radvansky*, 395 F.3d at 302 (citation omitted).

In light of the foregoing analysis, the Court finds that plaintiff has not shown a violation of constitutional rights that were "clearly established" at the time of the collision. The cases cited above and the parties' pleadings demonstrate that there is no support for a claim where the officer did not create or increase the risk of harm to an identifiable victim or group. Thus, such a claim cannot be "clearly established." Accordingly, the Court finds that, even if the plaintiff had shown a substantive due process claim, Officer Kimber is entitled to the defense of qualified immunity.

### C.     Civil Rights Claims Against the City of Knoxville

Citing *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998), the City argues that it may not be held liable under § 1983 without an underlying constitutional violation by its employees or agents. Thus, based on *DeShaney* and the reasons asserted by Officer Kimber, the City also argues that plaintiff cannot establish the required elements for a state-created

danger claim. In the absence of a constitutional violation by one of its employees, the City argues that plaintiff cannot prevail on his § 1983 claim against the City [Doc. 18 pp. 8–11].

In response, plaintiff first restates his arguments outlined above regarding the state-created danger exception in *Koulta*; that is, that the defendants' actions increased the risk of harm to plaintiff and that he was placed in special danger as part of a discrete group distinguishable from the public at large [Doc. 26 pp. 14–18]. These arguments fail in light of the reasons and findings outlined above. Plaintiff next argues that the individual defendants were inadequately trained on DUI detection and investigation and thus reflects the City's deliberate indifference as a basis for § 1983 liability [Doc. 26 pp. 18–20].

In reply, the City relies on the standard for liability for inadequate police training outlined in *City of Canton v. Harris*, 489 U.S. 378 (1989). That is, the plaintiff must prove that the training program at issue was inadequate to the task that officers must perform; that the inadequacy is the result of the City's deliberate indifference; and that the inadequacy is closely related to or actually caused the plaintiff's injury [Doc. 27 p. 11 (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992))]. The City argues that plaintiff has produced no evidence of insufficient training or deliberate indifference.

The Court agrees with the City. There can be no municipal liability based on the actions of an employee or agent without an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Smith*, 136 F.3d at 1078 n.12. The basis for municipal liability for failure to train was clearly stated in *City of Canton*: "We hold today

18

that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under §1983." 489 U.S. at 388–89. To establish such a claim:

> . . . the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable. Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.

*Id*. at 390–91 (citations omitted); *see Russo*, 953 F.2d at 1046.

In this case, the plaintiff has presented no competent evidence regarding the City's training of its police officers on DUI detection and investigation. Plaintiff relies upon excerpts from an unauthenticated manual entitled "DWI Detection & Standardized Field Sobriety Testing" [Doc. 19-9]. There is no testimony in the record authenticating this

document or that it is relied upon and used by the KPD. In the absence of such evidence, the Court cannot rely on this document (to the extent that it is relevant) in ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 250; *Harris v. City of St. Clairsville*, No. 07-3124, 2008 WL 1781236, at *5 (6th Cir. April 17, 2008). The Court is left with only plaintiff's conclusory assertions that the defendants' DUI training was inadequate and constituted deliberate indifference to the plaintiff. This is insufficient to state a § 1983 claim for inadequate training. Therefore, summary judgment is appropriate as to the plaintiff's § 1983 claim against the City of Knoxville.

### D. State-Law Claims

Plaintiff alleges state-law claims under the TGTLA and negligence for his injuries. The Court's analysis of plaintiff's federal civil rights claims, however, effectively disposes of those claims over which this Court has original jurisdiction. Under these circumstances, and pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise continuing "pendent" or supplemental jurisdiction over plaintiff's remaining state-law claims. Accordingly, in the exercise of its discretion and in the interests of comity, and noting that plaintiffs complaint was initially filed in state court and was removed to this Court, the Court declines to exercise continuing pendent jurisdiction over plaintiff's state-law claims. 28 U.S.C. § 1367(c); *United Mine Workers of Am. v. Gibbs* , 383 U.S. 715, 725–26 (1966). Thus, plaintiff's state-law claims will be remanded to state court.

20

## IV.    Conclusion

For the reasons explained herein, the Motion for Summary Judgment on Behalf of Defendants Thomas Thurman and Fred Kimber [Doc.12] and the City of Knoxville's Motion for Summary Judgment [Doc. 17] will be **GRANTED** in that the Court finds summary judgment in favor of the defendants appropriate as to plaintiff's federal civil rights claims. Plaintiff's federal causes of action will be **DISMISSED WITH PREJUDICE** and plaintiff's state causes of action will be **REMANDED** to state court.  There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE